FILED
2020 Mar-23 PM 02:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JIMMY DEE JOHNSON, | } |
| Plaintiff, | } |
| v. | } Case No.: 2:19-cv-111-RDP |
| ANDREW SAUL, SOCIAL SECURITY ADMINISTRATION, COMMISSIONER, | } |
| Defendant. | } |

## MEMORANDUM OPINION

Plaintiff Jimmy Dee Johnson ("Plaintiff") brings this action pursuant to Sections 216(i) and 223(d) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security (the "Commissioner") denying his claim for a period of disability and disability insurance benefits ("DIB"). *See* 42 U.S.C. § 405(g). Based on the court's review of the record and the parties' briefs, the court finds the decision of the Commissioner is due to be reversed and remanded for further consideration.

**I. Proceedings Below**

Plaintiff filed his application for disability insurance benefits on May 16, 2012, alleging that he was disabled on July 1, 2002. (R. 73, 133, 144). His last insured date was December 31, 2007. (R. 75, 144). Plaintiff's application for benefits was initially denied on August 7, 2012. (R. 81). After a hearing, an unfavorable decision by the ALJ, and an appeal, Judge Virginia Hopkins entered an order reversing the ALJ's decision and remanding the case to the Commissioner for

1

proceedings and findings concerning Plaintiff's residual functional limitations. (R. 549-74, 584). A new hearing was held on August 29, 2017, before ALJ Ronald Reeves. (R. 502-13, 537, 631). On October 3, 2018, the ALJ issued a new unfavorable decision, determining that Plaintiff had not been under a disability within the meaning of Sections 216(i) and 223(d) of the Act. (R. 513). That decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review.

**II. Facts**

Plaintiff was forty-eight years old on the alleged disability onset date and fifty-four years old on the date last insured. (R. 72, 77, 511). Plaintiff dropped out of school in the eleventh grade. (R. 148). He worked at a tire and repair shop from June 1979 until June 2002. (R. 148). When he stopped working in June 2002, Plaintiff was an Assistant Manager. (*Id.*). He has no other relevant employment history. (*Id.*). Plaintiff alleges he suffers from the following disabling impairments: severe hearing loss in both ears, diabetes, kidney cancer, arthritis, and high blood pressure. (R. 147).

Plaintiff was treated by Dr. Dennis Pappas from March 2000 through March 2012, which obviously addresses some period of time before the alleged onset date of July 1, 2002. (R. 200-13). That treatment continued beyond the date last insured of December 31, 2007. (*Id.*). The medical records consistently indicate that Plaintiff had problems with hearing, and had various hearing aid adjustments. (*Id.*). Notably, the records do not contain an assessment during the relevant period of July 1, 2002 through December 31, 2007. (*Id.*).

On May 10, 2004, Plaintiff presented to Dr. Lawrence Lee with bronchitis, hypertension, chest pain, and gastroesophageal reflux disease (GERD). (R. 374-75). Dr. Lee noted that Plaintiff was deaf in the right ear, and hearing impaired in the left ear. (R. 375). On May 24, 2004, Dr.

Lee noted improvement, and Plaintiff reported walking an hour a day for exercise. (R. 373). One year later, in July 2005, Plaintiff reported "feeling great" after walking for one hour for five days a week. (R. 365). On February 1, 2006, Dr. Lee reported Plaintiff was doing well, but did suffer from occasional sinus congestion. (R. 363-64). Dr. Lee diagnosed Plaintiff with new onset Type II diabetes in February 2007, noting that Plaintiff "eats ice cream every night, eats a lot of carbs, [and] eats out a lot." (R. 358-59).

On March 12, 2007, Dr. Pappas performed audiological testing, which showed profound sensorineural hearing loss. (R. 208, 212). By July 2007, Dr. Lee noted some improvement in Plaintiff's diet, and Plaintiff indicated no chest pain or shortness of breath. (R. 356-57). On October 2, 2007, Dr. Lee treated Plaintiff for allergic rhinitis, shortness of breath, and fatigue. (R. 354-55). Dr. Lee prescribed medication, and advised Plaintiff to stop smoking. (R. 355). By January 2008, just after the date last insured, Plaintiff was "doing well" with no chest pain or shortness of breath. (R. 352).

In March 2010, Dr. Pappas completed a form for Plaintiff's insurance carrier, opining that Plaintiff had profound sensorineural hearing loss that prevented communication with customers. (R. 210-12). Dr. Pappas also noted that Plaintiff could occasionally lift or carry up to 50 pounds, frequently lift or carry up to 20 pounds, sit up to 8 hours and stand up to 4 hours in an 8-hour workday, but could not climb or operate heavy equipment with noise exposure. (R. 213).

At the first hearing, which was held on October 31, 2013, Plaintiff testified that he is almost completely deaf in his right ear, and that hearing in his left ear is severely distorted. (R. 42-43). Plaintiff reported that his hearing began to deteriorate in 2000. (R. 50). Since 2007, Plaintiff's right ear has been "essentially useless." (R. 49). He has tried wearing a hearing aid in his right ear, but sound comes through distorted, like "a bad radio speaker" such that he cannot stand to use

3

the hearing aid for more than a day or so. (R. 43). Hearing aids have assisted Plaintiff in hearing in his left ear, but the sound becomes distorted when he turns the volume up. (*Id.*). His hearing doctor advised him not to work and to avoid noisy environments entirely. (R. 45).

A second hearing was held on August 29, 2017, following this court's remand. (R. 537-34). No new medical evidence was presented, and Plaintiff did not provide new testimony. (*Id.*). Similarly, the ALJ posed no new hypotheticals to the Vocational Expert, Debra Civils. (R. 539-44). The ALJ recognized that the only new evidence was Judge Hopkins's opinion from November 15, 2016. (R. 541, 549-74). When asked by the ALJ whether Plaintiff had "any objection to the testimony in the previous hearing," Plaintiff's counsel stated he did not. (R. 541) ("I'd just ask you to take judicial notice of the prior testimony."). Plaintiff specifically requested that the court address Dr. Pappas' limitations, and argued that Dr. Pappas' opinion "relates back to a condition . . . that was diagnosed during his period of insurability." (R. 541-43). The ALJ stated that he had the transcript of the prior hearing, then concluded the hearing. (R. 543).

### III. ALJ Decision

The Social Security Administration has established a five-part sequential evaluation process for determining whether an individual is disabled. 20 C.F.R. § 404.1520(a). First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 4041520(a)(4)(i). Substantial gainful activity ("SGA") is defined as work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination

4

of impairments that is "severe." 20 C.F.R. 404.1520(c). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id*. Third, the ALJ must determine whether the claimant's impairment or combination of impairments is of a severity to meet, or medically equal, the criteria of an impairment listed in 20 C.F.R. § 404, Subpart Π, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite the claimant's impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id*. If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the final part of the analysis, the ALJ must determine whether the claimant is able to do any other work considering his residual functional capacity age, education, and work experience. 20 C.F.R § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given the residual functional capacity, age, education, and work experience. 20 C.F.R. § 1512(f). 404.1560(c).

After consideration of the record, the ALJ made several findings. (R. 502-13). First, the ALJ found that Plaintiff had not engaged in substantial gainful activity between July 1, 2002, the alleged onset date, through December 31, 2007, his date last insured. (R. 504). Second, the ALJ found that Plaintiff had the following combination of severe impairments: bilateral profound sensorineural hearing loss requiring a left hearing aid, and no useful hearing in the right ear. (R. 505). The ALJ also noted that Plaintiff was diagnosed or received treatment for diabetes mellitus, hypertension, bronchitis, GERD, hypercholesterol, hypertriglycerides, eczema, and tobacco use. (*Id.*). The ALJ, however, noted these were non-severe impairments because they were either "asymptomatic, fairly well-controlled with medication, required no more than sporadic treatment, or that the claimant did not have a recurring diagnosis for some of these conditions." (*Id.*). Third, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart Π, Appendix 1. (*Id.*).

In assessing the fourth step, the ALJ determined that Plaintiff could not perform his past relevant work as a supervisor or as an automobile mechanic helper. (R. 511). But, the ALJ found that Plaintiff retained the residual functional capacity to perform a reduced range of medium work, except that Plaintiff has no effective hearing in the right ear, and requires both amplification through a hearing aid in the left ear and observation of individuals speaking (R. 506). Finally, the ALJ stated that he considered the testimony of a vocational expert ("V.E."), yet the ALJ did not elicit testimony from a V.E. at the second hearing. Nonetheless, the ALJ stated that a V.E. found that there was other work that existed in significant numbers in the national economy, and that Plaintiff could perform based on his age, education, past work experience, and RFC. (R. 511-12). Because Plaintiff retained the ability to perform the other work, such as a route delivery clerk,

meat clerk and library page, the ALJ found that Plaintiff was not disabled under Sections 216(i) and 223(d). (R. 513).

## IV. Plaintiff's Argument for Remand or Reversal

Plaintiff presents two arguments for review. Specifically, Plaintiff argues that (1) the ALJ improperly relied upon the V.E.'s testimony at the first hearing in reaching the second unfavorable decision; and (2) the ALJ's decision is not supported by substantial evidence because the ALJ failed to develop a full and fair record with a medical source statement, as mandated by this ourt. (Pl.'s Br., Doc # 9 at 10-14). Because the court finds remand is required on the first issue, the court need not addresses the second argument. *See generally. Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1991).

## V. Standard of Review

Judicial review of disability claims under the Act is limited to whether the Commissioner's decision is supported by substantial evidence or whether the correct legal standards were applied. 42 U.S.C. §405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). The Commissioner's factual findings are conclusive when supported by substantial evidence. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). If supported by substantial evidence, the Commissioner's factual findings must be affirmed, even if the record preponderates against the Commissioner's findings. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004). Despite the limited review of the ALJ's findings, review does not automatically prompt the court to affirm. *Lamb v. Bowen*, 847

F.2d 698, 701 (11th Cir. 1988). Legal standards are reviewed *de novo*. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

## VI. Discussion

For the reasons discussed below, the court finds that the Commissioner did not base his decision on substantial evidence, or apply the correct legal standards. Accordingly, the ALJ's decision is due to be reversed and remanded.

### A. The ALJ Violated this Court's Mandate by Relying on the Testimony of the Vocational Expert from the First Hearing.

Despite Judge Hopkins' detailed instructions on remand, the ALJ relied on the exact same V.E. testimony provided at the first hearing in reaching the second unfavorable decision. The doctrine of the law of the case "preclude[s] courts from revisiting issues that were [already] decided." *Cambridge Univ. Press v. Albert*, 906 F.3d 1290, 1299 (11th Cir. 2018) (internal quotations omitted). Further, "findings of fact and conclusions of law by an appellate court are generally binding in all subsequent proceedings in the same case in the trial court or on a later appeal." *Id*. (citing *Transamerica Leasing, Inc. v. Inst. of London Underwriters*, 430 F.3d 1326, 1331 (11th Cir. 2005)). Under the Eleventh Circuit's mandate rule, which "is nothing more than a specific application of the 'law of the case' doctrine," *Transamerica Leasing*, 430 F.3d at 1331, a trial court, "upon receiving the mandate of an appellate court, may not alter, amend, or examine the mandate, or give any further relief or review, but must enter an order in strict compliance with the mandate." (*Id*. citing *Piambino v. Bailey*, 757 F.2d 1112, 1129 (11th Cir. 1985)). "Although the trial court is free to address, as a matter of first impression, those issues not disposed of on appeal, it is bound to follow the appellate court's holdings, both expressed and implied." *Id*.

Judge Hopkins' November 15, 2016, decision provides the mandate, and the ALJ was bound to follow that mandate on remand. Specifically, the district court's original decision found

8

that the Commissioner failed to meet the step five burden "to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform." (R. 573 (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987))). As Judge Hopkins stated:

> In finding that Mr. Johnson was not disabled, the ALJ necessarily relied on the VE's answers to the first and second hypothetical questions. However, neither of these questions factored in Mr. Johnson's impairments of arthritis, type two diabetes, and hypertension. Therefore, the ALJ's hypothetical questions were incomplete, and he erroneously relied on the answers to these questions as posed to support his disability determination.

(R. 573-74). Moreover, the district court's original decision noted that, based on an ALJ's failure to pose complete hypothetical questions, the V.E.'s testimony cannot constitute substantial evidence, and "cannot support the ALJ's conclusions that [Plaintiff] could perform significant numbers of jobs in the national economy." *Id.* (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1181 (11th Cir. 2011)).

Despite that ruling, the ALJ again relied on the V.E.'s prior testimony from the first hearing in assessing step five, without considering any new hypothetical question or testimony from a V.E. (R. 512). The ALJ appeared to engage in a cut and paste exercise; the language in the first and second decisions mirror one another. *Compare* ALJ Decision I (32-33) *with* ALJ Decision II (R. 511-12).[1] Judge Hopkins found that the ALJ's two questions were incomplete because they failed to "factor[] in Mr. Johnson's impairments of arthritis, type two diabetes, and hypertension." (R.

---

[1] In the first decision, the ALJ stated that the:

> vocational expert testified that given all of these factors the individual would have been able to perform the requirements of representative occupations such as delivery clerk (DOT Code 222.587-034, light, low semi-skilled with SVP of 3), consisting of approximately 500 jobs in Alabama and 50,000 in the national economy); meat clerk (DOT Code 222.684-010, medium, unskilled with SVP of 2), consisting of approximately 1,000 jobs existing in Alabama and 50,000 in the [sic]national economy; and library page (DOT Code 249.684-010, light, unskilled), consisting of approximately 200 jobs existing in Alabama and 8,000 in the national economy. testimony that Plaintiff could perform work as a route delivery clerk, meat clerk, and library page.

(R. 33). In the second decision, the ALJ cited the same testimony, and stated that Plaintiff could perform the same representative occupations. (R. 512).

512).  But, on remand, the ALJ *again* failed to "list any of Mr. Johnson's impairments" when questioning the V.E.  *See id.* (noting ALJ's failure to reference, "either directly or indirectly," such impairments).  In fact, the ALJ failed execute the mandate of this court by failing to pose *any* new questions to the V.E.  Although Judge Hopkins found that the ALJ "erroneously relied on the answer[s]" to the incomplete questions, the ALJ *again* erroneously relied on the answers in forming the second decision.  (Pl. Br. Doc #11 at 17).  *See Dial v. Comm'r of Soc. Sec.*, 403 F. App'x 420 (11th Cir. 2010) (finding ALJ's failure to pose a complete hypothetical question to the V.E. was not harmless where the question excluded some of Plaintiff's employment limitations.)  Because of the incomplete questions, the V.E.'s testimony did not constitute "substantial evidence," and could not support the ALJ's conclusion that Plaintiff could perform significant numbers of jobs in the national economy.  (R. 573 (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1181 (11th Cir. 2011))).

Contrary to Commissioner's conclusion (that it would be a waste of administrative resources to require the ALJ to pose a new hypothetical to a V.E. with Plaintiff's new RFC), V.E. Debra Civils was present and able to provide vocational testimony at the August 2017 hearing. The ALJ simply did not elicit any testimony from Civils. (Pl. Br. Doc #11, at 17; R. 539). The ALJ could (and should) have posed additional questions to the V.E., particularly in light of this court's finding that "the ALJ's hypothetical questions were incomplete" at the first hearing. (R. 574). If the ALJ had posed complete hypothetical questions to the V.E., in accordance with this court's remand order, that would hardly constitute a "wasteful corrective exercise." (Pl. Br. Doc #11, at 17, citing *Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 (11th Cir. 2013)).

Because the ALJ again failed to pose complete hypothetical questions to the V.E., this court finds (consistent with the remand order of Judge Hopkins) that the V.E. testimony does not

constitute substantial evidence, and "cannot support the ALJ's conclusions that [Plaintiff] could perform significant numbers of jobs in the national economy." (R. 573). Accordingly, the ALJ's decision was not in "strict compliance" with this court's prior mandate. *See Transamerica Leasing*, 430 F.3d at 1331.

## VII. Conclusion

The court concludes that the ALJ's determination is not supported by substantial evidence, and the proper legal standards were not applied in reaching this determination. The Commissioner's final decision is therefore due to be **REVERESED AND REMANDED**. The court further finds that this case should be assigned to a different ALJ. A separate order in accordance with this memorandum decision will be entered.

**DONE** and **ORDERED** this March 23, 2020.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE